522-0399-WC Nathaniel L. McGaha, Appellant by Heidi Hoffe v. The Illinois Workers' Compensation Comm'n Dollar General Corporation, Appali by Sandy Etcheveste. Ms. Hoffe, you may proceed. Thank you, Your Honor. My name is Heidi Hoffe and I represent the appellant Nathaniel McGaha. He injured his left elbow at work while performing work duties in 2018. He continued working after that, but when surgery was recommended in June of 2019 and he was taken off of work in July of 2019, respondents then denied benefits, alleging that there had been an intervening accident that severed causal connection. Petitioner filed a notice of motion and order. Can you hear me? Yes. Okay. A notice of motion and order in 19B and two petitions for penalties in the case. The hearing was held in January of 2020 in Collinsville. In April, the arbitrator issued his decision, finding that petitioner's current conditions of left carpal tunnel syndrome, left cubital tunnel syndrome, and right carpal tunnel syndrome, as well as right upper extremity neuropathy in general, testing hasn't been done yet to confirm the exact diagnosis on the right. He found that those were causally related to the work accident. He did, however, deny penalties based upon saying the videos weren't sufficiently vexatious, which was not exactly our point, but in any event, that was done. But if you look at his decision, which is on at C48 to C50, it's an excellent analysis of causal connection in this case. Respondent appealed the decision on causal connection, and petitioner appealed the penalties decision. The commission reversed the arbitrator on causal connection, and the decision states, and I quote, petitioner did not present with symptoms of his current condition until approximately three months post-accident, and one month after jumping in the ice to save his dog. As there is no opinion causally linking petitioner's carpal and cubital tunnel syndromes, petitioner failed to prove that they are causally related to the work accident. Okay, let me stop you there, and why isn't, you know, can you give us a reason why there wasn't any kind of a medical opinion presented? Well, as soon as this happened, he was off of work, not getting any income. He was unable to work because he had medical restrictions, and respondent was claiming that the causal connection that existed had been severed by an intervening accident. By when he jumped into the lake to save his dog? Right. Okay. Problem with that is he wasn't injured in that incident. He didn't injure his right or his upper extremities at all in that incident, so you can never have an intervening accident if you don't have a subsequent injury, but that's what they said. That was the basis. But he did report a subsequent injury to his doctors shortly after that incident, just not to the extremities that he originally had injured, correct? He said he had it, right, it was to his knee. In the testimony, he scraped up his knee in that incident. He didn't injure his upper extremities at all in that incident. But the claw hand symptoms, and I'm not sure if that's a medical term or not, but the issue with his hand, that was first reported after the dog rescue, is that correct? I mean, there were a lot of things reported after the dog rescue, but the symptoms of neuropathy were there. They were there on December 31st, on January 9th, on February 18th, and the commission left all of those out. If you look at their factual summary, which I detailed in my reply brief, you look at what the medical records say, and then you look what the commission wrote, and they left out all the symptoms of neuropathy and then said there were none. But there were, there clearly were. All you have to do is look at the medical records to see they're there. They're there. So to say he didn't prove causal connection because there were no, what they're saying, he did not present with symptoms of his current condition until approximately three months after the accident. And that's just not true. He had those symptoms on the day of the accident. So counsel, you're acknowledging there was no medical opinion supporting causation, correct? No, there wasn't. Petitioner did not have a medical opinion. Did you argue a chain of causation or chain of events theory? Yes. Yes. And that's what the arbitrator found. He had no pre-existing conditions. There were no pre-existing conditions. He never had bursitis, he never had a fracture, he never had tendinitis or carpal tunnel, ulnar neuropathy, any of that until this accident. So the basis of the commission's decision is that he did not have any symptoms of neuropathy until three months after the accident. So a medical opinion would be new symptoms. I would understand that. But what they did is they're ignoring all these symptoms. They are there. They are there and they're right in the medical records. You can see it and it's set out in my brief or my reply brief. So then with regard to- And that is concerning all of what you just addressed is mainly concerning the left arm symptoms and injury, right? Correct? Initially, initially, his symptoms were in his left upper extremity. Correct. When did the right arm become an issue for him? Well, how long after the initial injury? It developed over time. He worked for seven months after this incident, but Dollar General did not accommodate his light duty restrictions. His right arm injury, he's attributing to overexertion or overuse as compensation for not using his left arm, correct? Right. The arbitrator found that his job required heavy physical labor and the restriction was no use, no lifting with the left arm. So he used his right arm and the symptoms developed as he was doing that. And he reported them, but Dollar General did not accommodate his restrictions until finally his doctor took him off of work. And I don't know why he waited that long, but in any event, when he took him off of work, then that was it. Then they denied the case. So as far as the right arm injury, you're suggesting that that was all a chain of events connected to the original injury to his left elbow? Yes. And is that why there's no right arm injury? I have a case here. It's part of the original injury. It's the natural consequence of this injury. Let me find the case. Here it is. Pardon? I was going to say why you were looking for it, but you found it, right? It's just every natural consequence that flows from an injury that arose out of and in the course of one's employment is compensable under the act absent the occurrence of an independent intervening accident that breaks the chain of causation. And that's the National Freight case. And so then that's what respondent was arguing is that causation was severed by this fall in the pond. So the natural consequence, Ms. Hoffey, your theory is the natural consequences is that his condition of ill-being of his right arm was a natural consequence of the injury from the left, right? Well, he injured his left arm. He went back to work. His work duties weren't accommodated. And he was still he was doing the same work he was when he injured himself initially with these rotators. And he reported this to his doctor. And it's in the medical records. I think the first report was on May 31st. No, that's yeah. So yeah. So the natural consequence is that he was compensating because of the injury to his left arm that led to the condition of ill-being in his right arm. Right. And I mean, he had no prior issues with either arm. That's the natural consequence of his. It's a natural consequence from the disputed, I suppose, injury on the left arm, correct? Right. Under these circumstances, if he had been off of work, not doing anything. Well, yeah. Well, I know that. Yeah. It was because he was at work performing these heavy duties. And Dollar General was not forced to compensate and overuse his right arm because of the work injury on his left arm. Yes. Okay. Trying to get to the kernel of it. Sorry. Jim, you've also appealed the commission's denial of penalties pursuant to 19L. Do you want to address why you believe the commission erred in that rule? Okay. The commission found that penalties were not appropriate because it says respondent had a medical causation opinion on which it relied to justify the denial of benefits accordingly. The denial was not sufficiently vexatious and unreasonable to warrant penalties and attorney's fees. But your position is that that didn't exist because there was a mention of an injury that occurred during the dog rescue. And the correct me if I'm wrong, your position is that they got it wrong, thinking that that injury somehow gave them a reason to quit paying on the original accident. And you're saying that the injury that occurred in the dog rescue was completely to a different part of the body had to do with the original accident that caused a dollar general to have to pay for his injury. Right. There could be no intervening accident, but that's what they were saying. And they initially claimed to have medical records to prove that which never surfaced. So then they But the main reason the penalties is wrong. The commission said the reason they didn't award penalties is because respondent relied upon an IME to justify the denial. And that's not true. You can see that because they had already denied benefits before he even saw the doctor and he was told to report back to it's in evidence as respondents exhibit a where states we did not rely on the IME when we denied benefits. The benefits were denied. The IME came later. So I mean, he says clearly that respondent did not rely on an IME when it denied benefits. And that was the basis for the arbitrator. That was the decision. That was the basis for the commission's decision. Yes, I quoted it exactly. It says respondent had a medical causation upon which it relied to justify the denial of benefits. Accordingly, it was not sufficiently vexatious because they said right before that this intervening accident defense is not persuasive. The commission erred on the evidence because the IME you're arguing came after that. Right. And respondent's attorney, there's an affidavit where he says we did not rely on. That's the evidence. That's evidence. Yeah. Yeah. Yeah. That affidavit. And then there's also evidence as he sat in the waiting room at the IME, he received two calls, one from his doctor's office saying Dollar General has denied all further medical treatment. And then another one telling him to report back to work. And this is before he even saw the doctor. So they couldn't have relied. He couldn't have relied on the IME because it hadn't even happened yet. Okay. So clearly, for those reasons, the existence, the basis of the commission's decision on causation is there were no, there's a gap there that wasn't filled with a medical opinion, but there is no gap. The red light is on. You'll have time and reply. Okay, thank you. Uh, Mr. Echeveste. Yes, sir. You may respond. Thank you, your honor. Uh, uh, good afternoon, your honors and counsel may have pleased the court. My name is Sandy Echeveste from Leahy, Eisenberg and Frankel, and we represent Dollar General, a defendant of police in this matter. And I'm here today to respectfully ask this court to affirm the decision of the circuit court of Wayne County that was entered on May 25th of 2022. The circuit court found that there was no error in the decision entered by the Illinois workers compensation on May 7th of 2021. And the circuit court affirmed the decision of the Illinois workers' compensation commission. Uh, as you know, the Illinois workers' compensation commission decides questions of back judges, the credibility of witnesses determines the weight that their witnesses testimony is given and draws reasonable inferences from all the evidence and also results conflicts in evidence. And on an appeal, the commission's decision will not be disturbed unless it's against the manifest weight of the evidence here. In this case, the circuit court determined that an opposite conclusion is not clearly apparent. And the commission's decision is not against the manifest weight of the evidence and from the council council. We know what the rules are. Why don't you tell us why it's not against the manifest way? Okay. The, uh, well, the circuit court correctly decided that the petitioner didn't meet his burden, establishing his current condition of ill being is possibly related to the work accident. Uh, after the December 31st of 2018 work accident petitioner was diagnosed with a small left elbow fracture. 12 days later, petitioner competed in a pool tournament and had no and he went to work that same day after the pool competition. Petitioner told Dr. Lee that he couldn't play pool and he couldn't do anything with his arm, but yet the video shows him picking up three pool balls with the same hand. Counsel, if I can interject the question, did the commission ever find that the claimant's testimony lacked credibility? Uh, I think that that is considered. I don't know that there's a separate opinion, but it took into account all his testimony, your honor, uh, that basically the discrepancies between what he told Dr. Lee and what he could do his testimony. For example, that he was the manager and he was the top person at that store. He could dictate the schedules. He could determine what restrictions he could follow. And then I'm crossing. And then later he test testifies. Well, well, no, they wouldn't follow my restrictions. They wouldn't do it, but he's the one that was in charge of setting the restriction. But there's a difference, even if there was arguably some inconsistencies with his testimony, the commission never expressed any negative comments about his credibility. Did they anywhere? They didn't specifically say so, but I would think that they, that that kind of played into their determination and, and, uh, and reversing the arbitrator. And that also went, the circuit court also would have considered that the differences in the testimony when it from the commission. Well, what are we reviewing here? Circuit court or the commission, the circuit court? No, no. I mean, that's okay. The commission, I'm sorry. Yeah. So we ought to focus on the commission here. So the, the commission determined that there was a new distinct and separate accident here. Uh, and February of 2019, two months after the December 31st elbow injury, the petitioner fall through the ice as you know, trying to rescue his dog three months later on March 6th of 29, the petitioner first complaint of new and different symptoms and a condition that was diagnosed as carpal tunnel and cubital tunnel. Okay. Where, where in the accident where he fell through the ice, where is there evidence, medical evidence that he injured any part of his body that he's complaining of afterwards? Dr. Lee was able to view, there was a video of him falling through the ice and getting out of the ice and Dr. Lee to opine that when he forcefully moved his arms to get out of the ice, that it was quite the struggle for him to get out of the ice, that that's what, uh, Activated. He had a preexisting condition, Dr. Leo pine, but that this up, this effort to get out of the ice, uh, brought out the new complaints and it wasn't the preexisting condition, the, uh, carpal tunnel and the, uh, cubital tunnel on the right arm, right on the right arm. Okay. And on the left arm, there was the, the, the, after he, after the, um, the, the small evulsion fracture heel, there was no complaints there. The, uh, petitioner was working light duty and he wasn't taken off of work until he was diagnosed with the carpal tunnel, the cubital tunnel, and was awaiting surgery. Up until that point, he was working under his restrictions. They were being accommodated and he accommodated them. Um, well, those restrictions were, uh, associated with or directed, were they not to the use of his left arm, right? Yes. Okay. So what do you make of this, uh, theory of opposing counsel of the claimants that he was under the restrictions, he ended up compensating, uh, and that overcompensation of his right arm led to his injury. I, I don't believe that that's accurate, your honor, because he was in charge of the facility. He testified that he could order people to show up and work at three in the morning, that he could assign tasks and everything. And it just doesn't make sense that he's, if he's in charge that he would assign himself to do heavy duty tasks when he knows that he's injured and he can have other people perform those tasks for him, according to his testimony. Wasn't it also, uh, put into evidence that he, he requested help from, I guess, the, the general incorporated they, he requested help because he didn't have the staff to man his store and that the, uh, and dollar general didn't send him or assign anyone to his store. So he was left to do those, those, uh, tasks on his own. That was his testimony. He didn't introduce any evidence to that effect. And, uh, he testified earlier that he could order people to come in and work at 3 a.m. If he wanted, if they, if he needed them, that he could have people come in. So I don't think that that argument has any merit. So, so was his, uh, testimony, um, disputed? I mean, did the dollar general produce evidence or testimony that here we assigned, you know, Joe Smith to go into his store and, and do those tasks. Uh, I was not the council at trial and I'm not aware that that, that there was any evidence introduced other than his testimony here on her. So that was the only evidence that they had was that, uh, that he says he didn't have the adequate staff to do the tasks necessary. And so he had to do them himself. That's what I understand, but it doesn't make sense when he's in charge of assigning work functions and duties and making up the schedules. Is it true that the commission found, uh, or pardon me, discredited the opinion that this man suffered an intervening cause? They, they, they, they said that he hadn't suffered an intervening cause. They said that that he suffered a different injury with new symptoms. They, I think what they looked at is if they said, if he had an intervening accident, that same elbow injury would have gotten more painful, would have gotten worse and would have required new, more, uh, invasive type treatment. None of that happened. The elbow went away after the, after he fell into the pond, his symptoms, all of a sudden his symptoms get worse. He's in pain. And for the first time they recommend surgery. So I think what they focused is they said that it was different from the fracture and that's why they said it wasn't an intervening accident. That's clear because it wasn't, it was something totally new and different. Um, I, in a way I think that they used the national freight analysis, uh, increased symptoms, different diagnosis, increased pain and new treatment recommendations. Although they said it wasn't an intervening accident, they found that it was something different and not causally related to the, uh, elbow bump. Well, the commission, the commission in its opinion wrote that it did not find that there was an intervening accident that took place on February 2nd, 2019. That's the dog in the pond. The commission finds that the conditions of carpal and cubital tunnel syndromes were different than the injury diagnosed as a result of the accident. And therefore a medical opinion would be necessary to causally connect those conditions to the work. The only medical causation opinion, uh, that is the fracture should have resolved in approximately three months post accident. And if the carpal tunnel conditions were not related to the work accident, they called it a failure of proof. Yes, I, I totally agree your honor. And we had a causal connection opinion. Petitioner did not fail to introduce any causal connection opinion. Uh, and, uh, what's left of your causal connection opinion, once the commissioner doesn't believe the basis upon which Dr. Lee, is that his name? Uh, determined that the carpal tunnel and cubital tunnel were caused by the, the incident with the dog in the pond. What might still, what is causally related is the small avulsion fracture. Anything that happened after that healed when he fell into the pond is not causally related as Dr. Lee. Well, yeah, but the commission found that, that the event in the pond, uh, was not an intervening accident. No, they said it was not fine that there was an intervening accident that took place in February 2nd, 2019. Right. They said it was something different and that different isn't related to something that happened three months earlier. Um, I mean, you know, he, he fell into the pond and he developed new symptoms. They were different, totally different. He didn't start out after the, after the accident complaining of carpal tunnel syndromes and, and, and cubital tunnel that did not come about the first complaint was on March 6th of 2019. So there's, there should not be any causal connection opinion other than the evolves. Well, I suppose my question goes to what did the commission actually decide? The commission actually decided that he failed to prove that there was a cause connection. Now, once they found that the dog incident in February was not an intervening cause, there doesn't seem to be a lot left of Dr., a basis for Dr. Lee's complaint. Liao, what's his name? Lee or Liao? Lee. Yes, he, he said that all of those things developed afterwards, but that, that doesn't mean that it's related to. Well, Lee, according to the commission, Lee opined that there was a fracture related to the work accident to resolve, but that his carpal and cubital tunnel syndrome were aggravated by an intervening accident on February 2nd, 2019. The commission goes on to find that they found no intervening accident that took place on February 2nd, 2019, but still found reverse the arbitrator because they said that there's no medical testimony that connects the syndromes to the fracture that he sustained at so Lee's opinion is undercut. And then the commission comes to its conclusion that there's failure of proof. Okay. Well, your honor, Dr. Lee is not a lawyer and he may be using intervening differently than we would use it in, in, in the legal setting. Uh, he did have that accident. Dr. Lee opined that all his symptoms started after he fell. The court found that there was not an intervening accident. Well, did he say that they just started after he fell? They say it was caused by the fall. What was Lee's opinion? Did he opine that the carpal tunnel and the He said that they were pre-existing and that they were brought out by the fall. So the, I think, I think we're trying to say the same thing. The, they didn't find an intervening accident, but at the same time, they didn't find that it was causally related to when he bumped his weren't causally related. They find found that he failed to prove that they were, and there's a big difference between the two. The red light is on Mr. Counsel. So do you have a summary or I just, I thank you for your time. And I just respectfully ask that you, uh, affirm the, the, uh, the, the decision of the commission and that that's all I can say, your honor. Thank you. Okay. Thank you. Council. Uh, Ms. Harvey, you may reply. Thank you, your honor. Um, I would point out Dr. or I mean, arbitrator Lee in his decision at C49 and in that area of pages discusses why petitioner's testimony is credible. It's consistent with the records. It's consistent with, you know, other evidence respondent didn't call any witnesses and didn't rebut any of his we're talking about on causal connection and, um, on causal connection when he's talking about the aggravation of his symptoms and overcompensating. If you would, if you will look at the arbitrator's decision on causal connection, it's very well reasoned and summarizes the evidence he finds Dr. Lee is not credible because he didn't even review all the medical records. And he gave an opinion in another appellate court case that is directly contrary to his opinion in this case. But I know I only have a minute. I would just ask, you know, respondent doesn't want you to look at the medical. They want to talk about videos and other things, but if you will just look at the medical, you will see the symptoms be after the fall in the pond, not totally different. The symptoms were already there before the fall in the pond, the fall in the pond did not injure his upper extremities at all. So, you know, nobody found intervening accident was credible. They were just saying they had an eye. The commission said because they had an IME that they relied on when they denied benefits, penalties aren't due. But what I'm saying is the defense attorney submitted an affidavit as respondents exhibit three and says, we did not rely on the IME and they didn't. They didn't rely on the IME. So that conclusion is against the manifest weight of the evidence and the conclusion regarding causal connection that there was some three month gap before the onset of any symptoms of neuropathy is also against the manifest weight of the evidence. And you'll see that if you look at the first four medical entries, you know, the Fairfield Memorial Hospital and 1231 and then Wabash General Hospital on January 9th. Fairfield Memorial Hospital on February 18th says he is having significant difficulties performing his work duties. Okay. Dr. Lee never even addressed his work duties, didn't know anything about his work duties, but it's in the videos and other things. But if you just, and they even left out the first three, you know, all this neuropathic symptoms are left out of their timeline. But if you look at the actual certified records, you will see that the symptoms are there. They were there before the fall in the pond, which makes the decision is just against the manifest weight of the evidence because it's based on this three month gap in symptoms. But there is no gap. They were there all along. The symptoms were there and they weren't changed by the fall in the pond at all because the fall in the pond didn't cause any injury. So for those reasons, we would respectfully ask that the court review the medical and reverse the commission's decision, reinstate the arbitrator's decision and remand the case for further proceedings. Thank you, your honors. Any questions from the court? Further questions? Thank you, counsel, both for your arguments in this matter this afternoon. It will be taken under advisement and written disposition will be forthcoming.